## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

| | |
|---|---|
| NUTRAMAX LABORATORIES, INC. AND NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SYNERGYLABS, LLC, <br><br> Defendants. | Case No. _____ <br><br><br> **JURY TRIAL DEMANDED** |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Nutramax Laboratories, Inc. ("Nutramax Labs") and Nutramax Laboratories Veterinary Sciences, Inc. ("Nutramax Vet") (collectively, "Nutramax" or "Plaintiffs"), through their undersigned counsel, bring this action against Defendant SynergyLabs, LLC ("SynergyLabs" or "Defendant"). In support of this Complaint, Plaintiffs allege as follows:

### NATURE OF THE ACTION

1. Nutramax researches, develops, and sells high-quality, innovative health supplements. One of Nutramax's veterinarian-recommended and highly regarded animal health supplement products is Solliquin®. The Solliquin® formulation contains a unique synergistic combination of ingredients that supports

calming behavior in dogs and cats, including L-Theanine, extracts of *magnolia* and *phellodendron*, and a whey protein.

2.     Nutramax has numerous patents protecting its inventions related to its health supplement products, including Solliquin®. For example, Nutramax Labs is the rightful owner of United States Patent Nos. 10,335,384 ("the '384 Patent," Exhibit 1) and 12,194,011 ("the '011 Patent," Exhibit 2), which are generally directed to synergistic combinations of L-Theanine, extracts of *magnolia* and *phellodendron*, and/or a whey protein (in the case of the '384 Patent) and their use for reducing, ameliorating, or treating symptoms of anxiety in mammals. Nutramax Vet is a wholly-owned subsidiary of Plaintiff Nutramax Labs and distributes Solliquin® in the United States as the exclusive licensee of the '384 and '011 Patents in the field of animal health supplements.

3.     SynergyLabs is a manufacturer of products, including pet supplements, that, on information and belief, has manufactured and/or continues to manufacture Wuffes Calming Chews ("Accused Products") for its client, Rowlo, LLC (d/b/a Wuffes). The Wuffes Calming Chews contain the same synergistic combination of ingredients claimed in the '384 and '011 Patents, and SynergyLabs' client, Wuffes, has marketed them as at least a functional equivalent to Solliquin® for alleviating stress and anxiety in dogs.

2

4.      SynergyLabs is not authorized, and has never been authorized, to use the '384 and '011 Patents (collectively, "the Asserted Patents"). Thus, SynergyLabs has infringed and/or continues to infringe, directly and/or indirectly, the Asserted Patents by making, using, selling, offering to sell, and/or importing the Accused Products, and this Complaint is necessary to remedy such infringing conduct. Plaintiffs accordingly file this Complaint seeking a judgment of and relief for SynergyLabs' infringement of the Asserted Patents.

## THE PARTIES

5.      Plaintiff Nutramax Labs is a corporation organized and existing under the laws of the State of South Carolina. Nutramax Labs maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720.

6.      Plaintiff Nutramax Vet is a corporation organized and existing under the laws of the State of South Carolina. Nutramax Vet maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720.

7.      Defendant SynergyLabs, LLC is a Florida limited liability company with its principal place of business at 888 SE 3rd Ave Fort Lauderdale, FL 33316.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, 35 U.S.C. § 271, et seq.

9. This Court has personal jurisdiction over SynergyLabs because it is incorporated in Florida and its principal place of business is in this District.

10. SynergyLabs regularly conducts business in Florida, including in this District, and purposefully avails itself of the privileges of conducting business in Florida and this District.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) at least because SynergyLabs resides in this District based on its state of incorporation and principal place of business.

## FACTUAL BACKGROUND

12. Since at least as early as 1992, Nutramax, on its own and through its licensed affiliates and resellers, has sold its health supplement products across the United States through a diversified portfolio of well-recognized and widely trusted brands, including but not limited to its Solliquin® product line.

13. Nutramax's health supplement products are utilized to help support joint health, support liver health, support heart health, support intestinal functions, and provide calming support, among other uses.

4

14.     Nutramax's health supplement products are widely regarded as the gold standard in the nutritional supplement industry because they are supported by research and studies, contain verified and validated active ingredients from reliable sources, and are manufactured in accordance with strict standards that ensure consumers receive a high-quality, safe, and effective product.

15.     In fact, the active compounds used in its health supplement products adhere to strict purity and quality standards, which differentiates Nutramax's products from many other products on the market that use inferior ingredients from unverified suppliers. The specific compounds and ingredients used in Nutramax's health supplement products have been researched and tested, and Nutramax has taken substantial steps to ensure that its products are of the highest quality. Using a quality management system, Nutramax maintains strict control over each step of the manufacturing process.

16.     Over the years, Nutramax has spent millions of dollars researching and developing its innovative health supplement products, and devotes significant financial resources each year to marketing as well.

17.     By virtue of Nutramax's commitment to the development and testing of its products, Nutramax has become acclaimed for its high-quality health supplement products. Nutramax's products are some of the most well-known and

respected in the industry, and many are the most frequently recommended products by veterinarians in their respective categories.

18. In addition, Nutramax's extensive investment in research and development of innovative health supplement products has led to significant innovation in the health supplement industry. This innovation has been recognized by the U.S. Patent and Trademark Office, which has issued numerous patents to Nutramax that cover various health supplement products.

19. Among Nutramax's patent-protected products is its Solliquin® line of products. Nutramax's Solliquin® products contain a proprietary combination of L-theanine, *Magnolia* and *Phellodendron* extracts, and whey protein that have been scientifically researched and shown to reduce behaviors associated with environmental stress.

20. The Solliquin® product line includes the Solliquin® Behavioral Health Supplement Calming Support for Cats and Dogs under 30 pounds ("Solliquin® for Small/Medium Dogs and Cats") and the Solliquin® Behavioral Health Supplement Calming Support for Cats and Dogs over 31 pounds ("Solliquin® for Large Dogs").

21. Solliquin® for Small/Medium Dogs and Cats contains a synergistic combination having 35 mg of L-Theanine, 75 mg of extracts of *Magnolia officinalis* and *Phellodendron amurense*, and 25 mg of dried whey protein concentrate (NMXSLQ05®). Solliquin® for Large Dogs contains a synergistic combination

having 102 mg of L-Theanine, 225 mg of extracts of *Magnolia officinalis* and *Phellodendron amurense*, and 50 mg of dried whey protein concentrate (NMXSLQ05®).

22.     The effectiveness of this Solliquin® formulation has been extensively studied. Studies[1] show that amounts and ratios of ingredients present in Solliquin® are synergistically effective in modulating at least one neurotransmitter and reducing or ameliorating symptoms of anxiety. Certain levels of effectiveness are true even for formulations that do not include the same amount or ratio of whey protein, or indeed include no whey protein.

## OVERVIEW OF THE ASSERTED PATENTS

### A.     The '384 Patent

23.     United States Patent No. 10,335,384 is entitled "Compositions Comprising Magnolia, Phellodendron, Theanine, and/or Whey Protein and names Todd Henderson, David Griffin, and David Bledsoe as the inventors. The '384 Patent was duly and legally issued on July 2, 2019. A true and correct copy of the '384 Patent is attached as Exhibit 1.

---

[1] Examples include Landsberg et al., *The Effects of a Nutritional Supplement (Solliquin) in Reducing Fear and Anxiety in a Laboratory Model of Thunder-induced Fear and Anxiety*, PROCEEDINGS OF THE 11TH INTERNATIONAL VETERINARY BEHAVIOR MEETING (2017); DePorter et al., *Case Report Series of Clinical Effectiveness and Safety of Solliquin® for Behavioral Support in Dogs and Cats*, VETERINARY BEHAVIOR SYMPOSIUM (2016); and the studies reported in the '384 and '011 Patents.

24. Plaintiff Nutramax Labs owns, by assignment, all right, title, and interest in and to the '384 Patent, and together with Nutramax Vet holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

25. Pursuant to a written agreement between Plaintiff Nutramax Labs and Plaintiff Nutramax Vet, Plaintiff Nutramax Vet holds the exclusive rights to make, use, offer for sale, and sell in the United States, and to import into the United States, products practicing the '384 Patent in the field of animal health supplements, as well as the exclusive rights to enforce the '384 Patent jointly with Nutramax Labs and to collect damages for any past, current, and future infringement.

**B.     The '011 Patent**

26. United States Patent No. 12,194,011 is entitled "Compositions Comprising Theanine, Magnolia, and Phellodendron," and names Todd Henderson, David Griffin, and David Bledsoe as the inventors. The '011 Patent was duly and legally issued on January 14, 2025. A true and correct copy of the '011 Patent is attached as Exhibit 2.

27. Plaintiff Nutramax Labs owns, by assignment, all right, title, and interest in and to the '011 Patent, and together with Nutramax Vet holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

8

28.    Pursuant to a written agreement between Plaintiff Nutramax Labs and Plaintiff Nutramax Vet, Plaintiff Nutramax Vet holds the exclusive rights to make, use, offer for sale, and sell in the United States, and to import into the United States, products practicing the '384 Patent in the field of animal health supplements, as well as the exclusive rights to enforce the '384 Patent jointly with Nutramax Labs and to collect damages for any past, current, and future infringement.

**SYNERGYLABS' INFRINGING PRODUCT AND CONDUCT**

29.    On information and belief, SynergyLabs has made, used, imported, sold, and/or offered for sale in the United States, and/or continues to make, use, import, sell, and/or offer for sale in the United States—and/or has contributed to and/or continues to contribute to others others to making, using, importing, selling, and/or offering for sale in the United States—the Wuffes Calming Chews ("the Accused Products").

30.    On information and belief, SynergyLabs has manufactured and/or may continues to manufacture the Accused Products and/or has caused them to be manufactured and/or may continue to cause them to be manufactured at its facility in North Carolina and sells and/or offers for sale the Accused Products to Rowlo, LLC (d/b/a Wuffes) ("Wuffes").

31.    For example, Wuffes listed a "Certifications" page on its website that shows a video of Wuffes' founder, Sam Venning, screwing a lid onto a product

9

container at a manufacturing facility. In the video, Sam is wearing a lab coat embossed with, on information and belief, the SynergyLabs logo.







32.    On February 27, 2026, Plaintiffs' counsel sent correspondence to SynergyLabs asserting that, on information and belief, SynergyLabs manufactures and/or distributes the Wuffes Calming Chews. SynergyLabs did not dispute the fact that it has manufactured and/or distributed the Wuffes Calming Chews, even after further correspondence where Plaintiffs' counsel repeated that understanding and gave SynergyLabs a date certain by which to correct any misunderstanding.

33.     The Wuffes Calming Chews contain a combination of L-Theanine, Relora® (a blend of extracts of *magnolia* and *phellodendron*), and dried whey (which upon information and belief includes a whey protein). Each chew contains 35 mg of L-Theanine, 75 mg of Relora®, and, on information and belief, an amount of dried whey sufficient to provide dogs with a highly digestible source of protein.

34.     On information and belief, these amounts of L-Theanine, Relora® (a blend of extracts of *magnolia* and *phellodendron*), and whey protein in the Wuffes Calming Chews are synergistically effective to modulate one or more neurotransmitters and reduce or ameliorate symptoms of anxiety. For example, in its advertising, Wuffes has equated the formulation in the Wuffes Calming Chews to the formulation in Nutramax's Solliquin® products, relying on a 2017 study involving Solliquin® to claim that the Wuffes Calming Chews effectively reduce anxiety.

**The Research**

🔗  Significantly reduces cortisol levels in both dogs and humans, helping to downregulate the HPA axis and reduce stress (Talbott et al., 2013; Landsberg et al., 2017).

🔗  Improves mood scores by reducing tension, confusion, and fatigue, while increasing vigor and calmness (Talbott et al., 2013).

🔗  Demonstrated behavioral improvements within days of supplementation in dogs with thunderstorm anxiety (Landsberg et al., 2017 – Solliquin Study).

🔗  Reduces hyperactivity and anxiety-like behavior in response to noise stress (Landsberg et al., 2017).

35.     This reliance on the "Landsberg et al., 2017 – Solliquin Study" for allegedly proving the effectiveness of Wuffes Calming Chews is tantamount to a statement that the formulation of the Wuffes Calming Chews is functionally the same as the formulation of Nutramax's Solliquin® product, including the amounts

and ratios of L-Theanine, extracts of *magnolia* and *phellodendron*, and whey protein that are proven to be synergistically effective in modulating at least one neurotransmitter. Studies[2] show that amounts and ratios of ingredients present in Solliquin®—which on information and belief are the same amounts present in the Wuffes Calming Chews[3]—are synergistically effective in modulating at least one neurotransmitter and reducing or ameliorating symptoms of anxiety.

36.     Further, on information and belief, the amounts of L-Theanine and Relora® (a blend of extracts of *magnolia* and *phellodendron*), in the Wuffes Calming Chews alone are synergistically effective to modulate one or more neurotransmitters and reduce or ameliorate symptoms of anxiety since levels of

---

[2] Examples include Landsberg et al., *The Effects of a Nutritional Supplement (Solliquin) in Reducing Fear and Anxiety in a Laboratory Model of Thunder-induced Fear and Anxiety*, PROCEEDINGS OF THE 11TH INTERNATIONAL VETERINARY BEHAVIOR MEETING (2017); DePorter et al., *Case Report Series of Clinical Effectiveness and Safety of Solliquin® for Behavioral Support in Dogs and Cats*, VETERINARY BEHAVIOR SYMPOSIUM (2016); and the studies reported in the '384 and '011 Patents.

[3] According to the product label, the amounts of L-Theanine and extracts of *magnolia* and *phellodendron* in Solliquin® for small dogs (35 mg of L-Theanine and 75 mg of extracts of *magnolia* and *phellodendron*) are the same amounts present in the Wuffes Calming Chews. On information and belief, the amount of whey protein in the Wuffes Calming Chews is believed to be the same and/or functionally equivalent to the amount of whey protein in Solliquin® based at least on Wuffes' own direct comparison to the Solliquin® formulation and Wuffes' statement on its website that there is sufficient dried whey "to provide dogs with a highly digestible source of protein."

effectiveness are true even for formulations that do not include the same amount or ratio of whey protein, or indeed include no whey protein.

37.     Even more than the fact that the formulation of the Wuffes Calming Chews has been equated to the formulation of Nutramax's Solliquin®, other marketing for the Wuffes' Calming Chews has asserted that the ingredients in the Wuffes Calming Chews—which include L-Theanine, extracts of *magnolia* and *phellodendron*, and whey protein in certain amounts—"have been scrutinized in thousands of studies, and are meticulously selected for their **combined effect** to reduce stress and promote calm."



38.     This direct reference to the "combined effect" of the ingredients similarly amounts to an assertion that the amounts of ingredients in the Wuffes Calming Chews (including L-Theanine, extracts of *magnolia* and *phellodendron*, and whey protein) are synergistically effective in reducing symptoms of anxiety.

13

39. The product label for the Wuffes Calming Chews claims that the formulation is "clinically tested" and "promotes relaxation." It further states that the Wuffes Calming Chews are ""[s]cientifically-formulated to promote a sense of relaxation and maintain calmness during environmentally-induced stress."

40. Moreover, other marketing materials for the Wuffes Calming Chews have claimed that the reduced symptoms of anxiety that allegedly come with administering the formulation of the Wuffes Calming Chews can be attributed, at least in part, to the fact its formulation "[s]upports mood balancing brain chemicals" and "[b]oosts natural calming neurotransmitters, including serotonin and GABA."

41. And, separate from the statement about the "combined effect" of "the ingredients" (which includes both active and inactive ingredients), marketing for the Wuffes Calming Chews has also pointed to the synergistically effective amounts of *active* ingredients in the Wuffes Calming Chews (which includes L-Theanine and extracts of *magnolia* and *phellodendron*) when stating that the Wuffes Calming Chews are "[f]ormulated with active ingredients at ***meaningful doses***" and instructing users to administer the Wuffes Calming Chews at dosages that will be effective.



42.     Individually, and taken together, the statements provided above support the conclusion that the amounts and ratios of L-Theanine, extracts of *magnolia* and *phellodendron*, and whey protein in the Wuffes Calming Chews are synergistically effective to modulate at least one neurotransmitter (e.g. serotonin and GABA) and reduce symptoms of anxiety, such as stress.

43.     On February 27, 2026, Plaintiffs' counsel sent correspondence to SynergyLabs, informing SynergyLabs that it has infringed and/or infringes the '384 and '011 Patents by, on information and belief, making, using, importing, selling, and/or offering for sale in the United States the Wuffes Calming Chews. Plaintiffs requested that SynergyLabs cease and desist all infringing activity and respond to Plaintiffs' letter by March 11, 2026.

15

44.    Counsel for SynergyLabs responded on March 11, 2026, thereby acknowledging receipt. The letter did not dispute that SynergyLabs has manufactured and/or distributed the Wuffes Calming Chews.

45.    Counsel for Plaintiffs responded to counsel for SynergyLabs' on March 13, 2026, repeating Plaintiffs' understanding that SynergyLabs has manufactured and/or distributed the Wuffes Calming Chews, and that based on SynergyLabs' failure to dispute this understanding, Plaintiffs would assume this information to be accurate absent correction from SynergyLabs by March 18, 2026.

46.    As of the date of this Complaint, counsel for SynergyLabs' has not responded to Plaintiffs' counsel's March 13, 2026 letter.

## GENERAL ALLEGATIONS RELATED TO INFRINGEMENT

47.    SynergyLabs has infringed and/or continues to infringe, directly and/or indirectly, at least one claims of each of the Asserted Patents by engaging in acts constituting infringement under 35 U.S.C. §§ 271 (a) and/or (c), including but not limited to one or more of making, using, selling, offering for sale, importing, exporting and contributing to infringement by others, the Accused Products in the United States.

48.    As a result of SynergyLabs' infringement, Nutramax has suffered and/or will continue to suffer harm in the form of reasonable royalties and/or lost

16

profits.  Nutramax seeks damages for infringing acts beginning as early as six years before the filing of this Complaint.

49.     Nutramax also seeks an injunction prohibiting further acts of infringement.  Each of SynergyLabs' acts of infringement has caused and/or will continue to cause Nutramax irreparable harm for which there is no adequate remedy at law.  Such injunctive relief would not disserve the public interest, and is warranted when considering the balance of the equities.

50.     On information and belief, SynergyLabs had at a minimum constructive knowledge and notice of infringement as to each of the Asserted Patents. On information and belief, SynergyLabs is a contract manufacturer for Wuffes and many other companies that are direct competitors of Nutramax in the pet supplement space. As such, SynergyLabs knew, should have known, or was willfully blind to the existence of the Asserted Patents at the time of SynergyLabs' infringing acts.

51.     On information and belief, the fact that SynergyLabs had at a minimum constructive knowledge of the Asserted Patents is also evident from the fact that marketing materials for the Accused Products have referred to Nutramax's Solliquin® line of products and at least implicitly acknowledged that the Solliquin® line of products includes a proprietary formulation. For example, not only has the distributor of the Accused Products, Wuffes, relied on a study that administers the Solliquin® formulation as an example of a study supporting the effectiveness of the

Wuffes Calming Chews, but Wuffes went so far as to call out Solliquin® by name when citing this study on the Wuffes website ("Landsberg et al., 2017 – Solliquin Study"). This study makes clear that Solliquin® contains a proprietary blend of L-theanine, extracts of *Magnolia officinalis* and *Phellodendron amurense*, and a whey protein concentrate.

52.     Further, the Solliquin® products are marked with the patent numbers of the Asserted Patents. Thus, the distributor's knowledge of and reliance on the Solliquin® line of products is further evidence that its manufacturer, SynergyLabs, had and continues to have at a minimum constructive knowledge of the Asserted Patents.

53.     SynergyLabs' infringement of the Asserted Patents has been, and/or continues to be, willful because SynergyLabs committed acts of infringement even though SynergyLabs knew or should have known that its actions constitute an unjustifiably high risk of infringement. For example, on information and belief, not only did SynergyLabs have at least constructive knowledge of the Asserted Patents and know the Asserted Patents cover Solliquin®, as noted above, but on information and belief, SynergyLabs also knew or should have known that its actions related to the Wuffes Calming Chews constitute an unjustifiably high risk of infringing those Asserted Patents because its distributor, Wuffes, has equated the formulation of the Calming Chews to the patented formulation of Solliquin®.

18

54. SynergyLabs' infringement of the Asserted Patents was and/or continues to be without permission, consent, authorization or license.

## **COUNT I: INFRINGEMENT OF THE '384 PATENT**

55. Plaintiffs incorporate the allegations of all the foregoing paragraphs as if fully restated herein.

56. SynergyLabs has infringed, and/or contributed to the infringement of— and/or continues to infringe and/or contribute to the infringement of—of the '384 Patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Products that are covered by one or more claims of the '384 Patent.

57. The Accused Products directly infringe, literally and/or through the doctrine of equivalents, one or more claims of the '384 Patent under 35 U.S.C. § 271(a). SynergyLabs has made, used, sold, offered for sale, and/or imported in the United States—and/or may continue to make, use, sell, offer for sale, and/or import in the United States—the Accused Products and thus directly infringes claims of the '384 Patent.

58. As illustrated in Exhibit 3, which is incorporated here by reference, the Accused Products infringe at least Claims 1, 3-7, and 9-11 of the '384 Patent because they include the claimed synergistic combination of ingredients recited in the Claims.

59. SynergyLabs has also indirectly infringed and/or continues to indirectly infringe claims of the '384 Patent as provided in 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as Wuffes and its customers, in the United States. SynergyLabs' affirmative acts of manufacturing and/or distributing the Accused Products, and causing the Accused Products to be manufactured and/or distributed have contributed and/or continue to contribute to others' use of the Accused Products, such that the '384 Patent is directly infringed. The Accused Products are material to the invention of the '384 Patent and are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by SynergyLabs to be especially made or especially adapted for use in infringement of the '384 Patent. SynergyLabs has performed these affirmative acts with knowledge, actual or constructive, of the '384 Patent and with intent, or willful blindness, that they cause the direct infringement of the '384 Patent.

60. SynergyLabs' acts of infringement have caused damage to Plaintiffs. Plaintiffs are entitled to recover from SynergyLabs the damages sustained by Plaintiffs as a result of its wrongful acts in an amount subject to proof at trial.

61. Plaintiffs provide the foregoing explanation of infringement with regard to exemplary claims compared to the exemplary Accused Product and exemplary functionality. Plaintiffs reserve the right to present additional or

20

alternative explanations of infringement for the claim and functionalities and for other claims and functionalities of the Accused Product.

## COUNT II: INFRINGEMENT OF THE '011 PATENT

62.    Plaintiffs incorporate the allegations of all the foregoing paragraphs as if fully restated herein.

63.    SynergyLabs has infringed, and/or contributed to the infringement of— and/or continues to infringe, and/or contribute to the infringement of—of the '011 Patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Products that are covered by one or more claims of the '011 Patent.

64.    The Accused Products directly infringe, literally and/or through the doctrine of equivalents, one or more claims of the '011 Patent under 35 U.S.C. § 271(a).  SynergyLabs has made, used, sold, offered for sale, and/or imported into in the United States—and/or continues to make, use, sell, offer for sale, and/or import in the United States—the Accused Products and thus directly infringes claims of the '011 Patent.

65.    As illustrated in Exhibit 4, which is incorporated here by reference, the Accused Products infringe at least Claims 1-10 and 13-20 of the '011 Patent because they include the claimed synergistic combination of ingredients recited in the Claims.

66.     SynergyLabs has also indirectly infringed and/or continues to indirectly infringe claims of the '011 Patent as provided in 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as Wuffes and its customers, in the United States. SynergyLabs' affirmative acts of manufacturing and/or distributing the Accused Products, and causing the Accused Products to be manufactured and/or distributed have contributed and/or continue to contribute to others' use of the Accused Products, such that the '011 Patent is directly infringed. The Accused Products are material to the invention of the '011 Patent and are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by SynergyLabs to be especially made or especially adapted for use in infringement of the '011 Patent.  SynergyLabs has performed these affirmative acts with knowledge, actual or constructive, of the '011 Patent and with intent, or willful blindness, that they cause the direct infringement of the '011 Patent.

67.     SynergyLabs' acts of infringement have caused damage to Plaintiffs. Plaintiffs are entitled to recover from SynergyLabs the damages sustained by Plaintiffs as a result of its wrongful acts in an amount subject to proof at trial.

68.     Plaintiffs provide the foregoing explanation of infringement with regard to exemplary claims compared to the exemplary Accused Product and exemplary functionality. Plaintiffs reserve the right to present additional or

22

alternative explanations of infringement for the claim and functionalities and for other claims and functionalities of the Accused Product.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for any and all issues triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask the Court for an order granting the following relief:

A. A judgment in favor of Plaintiffs that SynergyLabs has infringed, either literally and/or under the doctrine of equivalents, the '384 and '011 Patents;

B. An award of damages adequate to compensate Nutramax for infringement of the Asserted Patents by SynergyLabs, in an amount to be proven at trial, including supplemental post-verdict damages together with pre-judgment and post-judgment interest and costs, until such time as SynergyLabs ceases its infringing conduct;

C. A judgment and order finding that SynergyLabs' infringement has been willful;

D. A permanent injunction prohibiting SynergyLabs from further acts of infringement;

E. Enhanced damages for willful infringement pursuant to 35 U.S.C. § 284;

F. A judgment and order declaring that this is an exceptional case within the meaning of 35 U.S.C. § 285;

G. The costs of this action as well as reasonable attorneys' fees provided by 35 U.S.C. § 285; and

H. All other relief, in law or equity, to which Nutramax is entitled.

Dated: April 2, 2026

Respectfully Submitted,

LASHGOLDBERG
Lash Goldberg Fineberg LLP
2500 Weston Road, Suite 220
Fort Lauderdale, FL 33331
Tel: (954) 384-2500
Fax: (954) 384-2510

By: /s/ Martin B. Goldberg
     MARTIN B. GOLDBERG
     Florida Bar No. 827029
     mgoldberg@lashgoldberg.com
     rdiaz@lashgoldberg.com
     BENJAMIN R. SHIEKMAN
     Florida Bar No. 113114
     bshiekman@lashgoldberg.com
     obencomo@lashgoldberg.com

     Natalie C. Clayton*
     natalie.clayton@alston.com
     Madeline E. Byrd*
     maddy.byrd@alston.com
     **ALSTON & BIRD LLP**
     90 Park Avenue, 15th Floor
     New York, NY 10016
     Telephone: (212) 210-9400
     Facsimile: (212) 210-9444

     *Pro hac vice applications
     forthcoming

     *Counsel for Plaintiffs Nutramax
     Laboratories, Inc. and Nutramax
     Laboratories Veterinary Sciences,
     Inc.*

24